IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JACQUELINE J. KINNETT/SPENCER, | ) | CASE NO. 4:06CV3215 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| RANDY KOHL, SCOTT GLEIM, and | ) | |
| GORGIA OEHLERT, | ) | |
| | ) | |
| Defendants. | ) | |

The matter before the Court is on the Defendant Dr. Randy Kohl's ("Dr. Kohl") Motion for Summary Judgment (Filing No. 20). For the reasons stated below, the motion will be granted, and the Plaintiff Jacqueline Kinnett/Spencer's ("Kinnett/Spencer") Amended Complaint (Filing No. 1, amended by Text Order at Filing No. 17) will be dismissed with prejudice with regard to Dr. Kohl.

**Procedural History**

On September 13, 2006, Kinnett/Spencer, an inmate at the time of filing, filed a pro se Complaint[1] with this Court against Dr. Kohl, as the "Medical Director" and as "the person." (Filing No. 1, p. 1). She alleges that she has severe back pain and that Dr. Kohl refuses to give her the "treatment [she] is really needing." (*Id.* at 4). She asks that this Court issue an order directing that she get the medical care and treatment she has been asking for, presumably another MRI and back surgery, and that Dr. Kohl be made to pay compensation for her unnecessary pain and suffering. On March 22, 2007, Dr. Kohl filed

---

[1]Kinnett/Spencer later amended her Complaint, and in a Text Order (Filing No. 17), issued on March 15, 2007, two additional defendants were added—Scott Gleim, a physician's assistant, and Gorgia Oehlert, a nurse. I note that although all three Defendants are represented by the same attorney, the Motion for Summary Judgment, filed after the Amended Complaint, only concerns Dr. Kohl.

a Motion for Summary Judgment, and a brief in support of that motion. Kinnett/Spencer has filed no brief in opposition.[2]

### Standard of Review

I note that Kinnett/Spencer is a pro se litigant, and as such her pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Ellis v. Butler*, 890 F.2d 1001, 1003 (8th Cir. 1989) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus.*

---

[2]On May 17, 2007, the Clerk of the Court entered a Text Order (Filing No. 27) on behalf of Kennett/Spencer, notifying the Court of a change of address for Kinnett/Spencer, effective May 30, 2007. Although there is no direct evidence or argument on the record, presumably, she is no longer an inmate, as her new address is a residential address. I will decide this case on the merits in its entirety; however, I note that if she is no longer an inmate, her request for injunctive relief is moot. *See Wycoff v. Brewer*, 572 F.2d 1260 (8th Cir. 1978).

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

**Facts**

Viewing the record in the light most favorable to the Plaintiff, the following events occurred.[3] Kinnett/Spencer, at the time of filing the Complaint, was an inmate in the custody of the Nebraska Department of Correctional Services at the Community Corrections Center in Lincoln, Nebraska. Dr. Kohl is the Medical Director for the Nebraska Department of Correctional Services. (Filing No. 21, p. 1 ¶¶ 1–2).

On July 19, 2004, Kinnett/Spencer entered the Nebraska Correctional Center for Women and, at the intake medical screening, reported that she had back pain. Dr. Kohl

---

[3]Although the Defendant has complied with the format criteria of NECivR 56.1 by setting out a statement of facts consisting of short numbered paragraphs with pinpoint references to the record, the Plaintiff has not submitted a brief in opposition as directed by NECivR 56.1. However, pursuant to NECivR 56.1(b)(2), failure to file an opposition does not mean that the Plaintiff acquiesces to the Defendant's motion.

approved an appointment with a neurologist, and on December 12, 2004, Kinnett/Spenser saw a neurologist who prescribed conservative treatment. On February 23, 2005, a Department of Correctional Services doctor saw Kinnett/Spencer and requested that the staff document her activity and follow up on her condition in one month. On March 8, 2005, a physician's assistant examined Kinnett/Spencer. On April 12, 2005, the neurologist had another appointment with Kinnett/Spencer, and approved lumbar physical therapy. On April 19, 2005, Kinnett/Spencer again saw the physician's assistant who recommended increasing her pain medicine (Vicodin). On April 25, 2005, the physical therapist recommended and Dr. Kohl approved an epidural steroid injection, which Kinnett/Spencer received on May 10, 2005. An MRI was approved and performed on Kinnett/Spencer on August 31, 2005. On October 7, 2005, Kinnett/Spencer received an extra pillow, and on October 27, 2005, she received an "egg crate" mattress. On October 14, 2005, Kinnett/Spencer met with another physician's assistant, who agreed to discontinue Vicodin and to start a different medication. On February 8, 2006, Kinnett/Spencer saw a physical therapist from Lincoln Orthopedic Physical Therapy, who found that her condition had stabilized and was not likely to improve with surgical intervention or active medical treatment. On June 21, 2006, Kinnett/Spencer saw her own private specialist; and that specialist requested another MRI, which was approved and performed on September 12, 2006. On October 13, 2006, Kinnett/Spencer was examined by another Nebraska Department of Correctional Services physician, who found that she had false expectations about the benefits of surgical procedures. Kinnett/Spencer saw a second private specialist, who did not recommend surgery. (Filing No. 21, pp. 2–6 ¶¶ 6–39).

**Discussion**

As an initial matter, I note that it appears Kinnett/Spencer has not exhausted her administrative remedies. As stated in *Jones v. Norris*, 310 F.3d 610 (8th Cir. 2002), "[t]he Prison Litigation Reform Act (PLRA) amendments to 42 U.S.C. § 1997e(a), mandate exhaustion of available administrative remedies before an inmate files suit." *Id.* at 612 (citing *Booth v. Churner*, 532 U.S. 731 (2001)). "[P]risoners in Nebraska must adhere to and exhaust available procedures before bringing a § 1983 claim." *Kellogg v. Neb. Dept. of Corr. Servs.*, 690 N.W.2d 574, 582 (Neb. 2005). The administrative remedies include those found at Neb. Rev. Stat. §§ 83-4,111 and 83-4,135 through 83-4,139; 68 Neb. Admin. Code, ch. 2; and, "[i]n particular, 68 Neb. Admin. Code, ch. 2, § 005.01, [which states]: 'Claims against the Department [of Correctional Services] involving miscellaneous or tort claims for money damages may be filed pursuant to the State Tort Claims Act.'" *Id.* at 581–82 (citation omitted). *See* Neb. Rev. Stat. § 81-8,211 ("Authority is hereby conferred upon the State Claims Board, acting on behalf of the State of Nebraska, to consider, ascertain, adjust, compromise, settle, determine, and allow any tort claim."). Although Kinnett/Spencer alleges in her Complaint that she filed "informal, step one and step two grievance" forms, there is no evidence that she brought her current claim for monetary damages (for pain and suffering) before the State Claims Board, and has therefore not exhausted her administrative remedies.

However, even if Kinnett/Spencer had exhausted all of the available administrative remedies, Dr. Kohl's Motion for Summary Judgment would still be granted. A government official, sued for damages pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity

5

unless the plaintiff shows that the official violated a "clearly established" federal statutory or constitutional right of the plaintiff. For a right to be considered "clearly established," a plaintiff must demonstrate that a reasonable person would have known (1) of the plaintiff's right; and (2) that the conduct at issue violated the plaintiff's right. *See Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

As explained in *Hope v. Pelzer*, 536 U.S. 730 (2002), "clearly established law" means that a governmental official is entitled to "fair warning" that the conduct in question would deprive the plaintiff of a constitutional right. *Id.* at 739–40. Thus, the "salient question" is whether the state of the law when Dr. Kohl acted gave him "fair warning" that his conduct was unconstitutional. *Id.* at 741.

"A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'" *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). It has long been established that "a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Meloy v. Bachmeier*, 302 F.3d 845, 848 (8th Cir. 2002).

In addition, "'[i]t is well settled that an intentional delay in obtaining medical care for a prisoner who needs it may be a violation of the eighth amendment.'" *Olson*, 339 F.3d at

738 (quoting *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001)). To establish deliberate indifference, a prisoner must prove she had objectively serious medical needs which the official actually knew of but deliberately disregarded. *Meloy*, 302 F.3d at 848–49. "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Id.* at 849 (citing *Estelle*, 429 U.S. at 104–05).

To illustrate by way of example, the Eighth Circuit Court of Appeals in *Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997), upheld a finding that a nurse was deliberately indifferent to an inmate's medical needs by ignoring (*i.e.*, doing *nothing* about), the inmate's claims that she was in labor. In that case, the court commented that the plaintiff's "propensity for precipitous labor and premature delivery was well-documented and expressly noted by prison officials in [the plaintiff's] medical records, to which [the defendant] had been exposed. . . . From this evidence, a trier of fact could have found that [the defendant] had actual knowledge of the risk of pre-term labor. We therefore hold that the district court did not clearly err in finding that [the defendant's] unnecessary delay in transferring [the plaintiff] to the University constituted deliberate indifference to [the plaintiff's] serious medical need." *Id.* at 786.

Conversely, in *Jones*, 310 F.3d 610, the Eighth Circuit Court of Appeals upheld a district court's finding that there was no deliberate indifference to an inmate's medical needs. In that case, the plaintiff claimed that the prison's medical staff refused to treat his back pain. The court found that "[t]he record shows that [the plaintiff] received 13 medical

7

examinations . . . and recommendations to treat his muscular back pain with Tylenol. . . . [The plaintiff] provided no evidence beyond [conclusory allegations about his need for medical care], which are insufficient to create a question of material fact. At best, [the plaintiff's] allegations state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation." *Id.* at 612.

The facts of the case currently before this Court are much more akin to the facts of *Jones*. Although Kinnett/Spencer disagrees with the medical staff's suggested course of action, she has provided no evidence that there has been any denial or delay in furnishing her medical treatment. Indeed, the medical staff pursued many treatment options for Kinnett/Spencer—including several exams, two MRIs, physical therapy, additional amenities such as extra pillows and a foam mattress, and several prescription medications—to help alleviate Kinnett/Spencer's pain. Consequently, I find no genuine issue of material fact to support Kinnett/Spencer's 42 U.S.C. § 1983 cause of action.

For these reasons, I will dismiss Kinnett/Spencer's Complaint as it relates to Dr. Kohl. At present, I do not see how the arguments presented by Dr. Kohl differ from those available to the remaining Defendants. However, I note that the remaining Defendants have not moved for the action against them to be dismissed, and consequently, Kinnett/Spencer's Complaint against them will remain.

IT IS ORDERED:

1. The Motion for Summary Judgment (Filing No. 20), filed by the Defendant Randy Kohl is granted; and

2. The Amended Complaint (Filing No. 1, amended by Text Order at Filing No. 17) is dismissed with prejudice as to Randy Kohl.

DATED this 19th day of June, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

9